# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

SOLEL UMANI,
a.k.a. Anthony Bethea,

        CASE NO. 07-CV-10649

        Plaintiff,

        DISTRICT JUDGE ANNA DIGGS TAYLOR
        MAGISTRATE JUDGE CHARLES E. BINDER

*v.*

PATRICIA CARUSO,[1] Director,
HUGH WOLFENBERGER,[2] Warden,
CHARLENE CARBERRY, Deputy Warden,
JOE SCOTT, ADW, KEITH GREEN, FSD,
CONNIE IGNASIAK, AFSD, and
ROBERT AL SHAREEF, FSS,

        Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### (Dkt. 19)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED in part and DENIED in part,** as follows:

A) the motions be **GRANTED** as to:

> 1) Defendant Caruso and Defendant Al Shareef for lack of personal involvement (with prejudice);
> 2) Defendant Carberry, substantively and for failure to exhaust (with prejudice)
> 3) All Due Process claims, both procedural and substantive, regarding both Plaintiff's loss of prison job and transfer (with prejudice)
> 4) First Amendment Retaliation claims regarding both Plaintiff's loss of prison job and transfer (with prejudice)
> 5) Eighth Amendment claims regarding both Plaintiff's loss of prison job and transfer (with prejudice)

---

[1]Defendant Michigan Department of Corrections was terminated from the case by Order of the District Judge on March 8, 2007.

[2]His last name appears to be properly spelled Wolfenbarger and may be throughout this Report.

6) Any potentially remaining claims based on transfer for failure to exhaust (without prejudice)

and

B) **DENIED** as to:

1) conspiracy claims against Defendants Ignasiak, Green, Scott, and Wolfenbarger only, and
2) equal protection claims against Defendants Ignasiak, Green, Scott, and Wolfenbarger only, as I conclude that Defendants Ignasiak, Green, Scott and Wolfenbarger are not entitled to qualified immunity as to the above conspiracy and equal protection claims

## II.   REPORT

### A.   Introduction

Plaintiff Solel Umani is a state prisoner who is currently incarcerated at the Michigan Reformatory in Ionia, Michigan.  The events that form the basis of the instant complaint occurred while Plaintiff was incarcerated at the Macomb Correctional Facility ("MRF"), in New Haven, Michigan.  On February 13, 2007, Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983 and an application to proceed without prepayment of fees pursuant to the *in forma pauperis* ("IFP") statute.  (Dkt. 1. 2); 28 U.S.C. § 1915(a)(1).  IFP status was granted on February 15, 2007. (Dkt. 3.)  An Order dismissing the Michigan Department of Corrections ("MDOC") was entered on March 8, 2007. (Dkt. 4.)  The remaining Defendants filed the instant motion for summary judgment on May 25, 2007 (Dkt. 19), and the case was referred to the undersigned magistrate judge for pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B) on May 30, 2007. (Dkt. 20.) Plaintiff has responded to the motion. (Dkt. 23.)[3]  Upon review of the documents, I conclude that

_____

[3]Plaintiff's response is entitled "Motion to Correct Pleadings and to Deny Defendant's Motion for Summary Judgment."

2

pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation on the pleadings without oral argument.

## B.     The Complaint

Plaintiff alleges that on February 7, 2005, he was "employed as an assistant lead at MRF food service and obtained permission from my supervisor and Defendant, FSS [Food Service Supervisor][4] Robert Al Shareef to leave early." (Compl., Dkt 1 ¶ 13.) Later that day, Defendant FSD [Food Service Director] Green informed Plaintiff that he was "[b]eing laid-in with loss of bonus for leaving work without permission." (*Id.* ¶ 14.) Plaintiff "vehemently denied the allegation, told Defendant Green [that he] had been authorized by staff, tried to reason with him [but] to no avail." (*Id.* ¶ 15.) On February 8, 2005, Defendant Al Shareef issued a minor misconduct ticket against Plaintiff "alleging that [Plaintiff] left work without permission." (*Id.* ¶ 16.) As a result, Plaintiff was "laid in" "'pending the outcome' of the alleged misconduct." (*Id.* ¶ 17.) On February 11, 2005, a hearing was held by "ARUS Wade [who] spoke with FSS Al Shareef on the phone, confirmed through him that he did in fact give me permission to leave work early...[and therefore] found [Plaintiff] not guilty...and ordered me to return to work." (*Id.* ¶ 20.) On February 12, 2005, Plaintiff returned to work. (*Id.* ¶ 21.)

Plaintiff alleges that ARUS Wade informed Plaintiff that he had been "scolded" for finding Plaintiff not guilty and that Plaintiff "would probably be terminated." (*Id.* ¶¶ 22-23.) On February 19, 2005, while working, Plaintiff "observed Warden Wolfenberger, ADW [Assistant Deputy Warden] Scott, FSD [Food Service Director] Green, and AFSD [Assistant Food Service Director] Ignasiak in the office talking for some time." (*Id.* ¶ 25.) Defendant Al Shareef "summoned [Plaintiff] to the office" and on his way there Plaintiff was told by Defendant Green that he would

---

[4]The Defendant's job titles are derived from Paragraphs 4-10 of Plaintiff's Complaint.

be terminated. (*Id.* ¶ 26.) When Plaintiff asked why he would be terminated, Plaintiff alleges that Defendant Green told him to ask Defendant Ignasiak and when Plaintiff pressed Defendant Green further, he responded, "That little shit Wade did [*sic*] ain't working with nothing. Ya'll some worthless convicts. Some niggers are insignificant in the scheme of things around here." (*Id.* ¶ 27.) Plaintiff avers that Defendant Ignasiak told Plaintiff he was terminated because he left without permission. (*Id.* ¶29.) When Plaintiff responded that ARUS Wade found him not guilty, Plaintiff alleges that Defendant Ignasiak stated "'[a]nd we know about ARUS Wade. And we know how you people stick together. Don't worry. The Deps' got his number and so does the warden.'" (*Id.* ¶ 30.) Plaintiff further alleges that Defendant Ignasiak told him that "she and Defendant Green had 'discussed the matter with the warden and had determined that [Plaintiff] was in fact guilty, irrespective of ARUS Wade's findings.'" (*Id.* ¶ 31.)

Plaintiff also alleges that the work report he received from Defendant Ignasiak had been altered by Defendants Ignasiak and Green to lower his evaluation rating from an above average score of 37 to a far below average score of 1. (*Id.* ¶ 32; Ex. E.) Defendants counter that on February 8, 2005, Plaintiff was evaluated and received a score of 37 but was re-evaluated on February 18, 2005, and received a 31. (Def. MSJ, Dkt. 19 at 3, Ex. 4.) [5]

Plaintiff filed grievance no. MRF 05-03-00410-02a complaining that he was unfairly fired and that the Defendants conspired against him to deprive him of that privilege. (Dkt. 19, Ex. 5.) That grievance was denied as lacking merit at Step I (*Id.*, Ex. 6.) At Step II, the grievance was denied because the food service worker detail is "considered a role model position" and because

---

[5]I note that Exhibit E to Plaintiff's complaint is not a completed form while Exhibit 4 attached to Defendants' brief is. In addition, Plaintiff's exhibit has no individual ratings circled as answers to questions 1-13 and then simply contains a "total score" of "1." Since there can be no "total" score rendered from unscored individual questions and since the individual scores and total score of "31" or "32" on Defendants' exhibit is a more reasonable number, I suggest that Defendants' Exhibit is the actual evaluation and that Plaintiff's exhibit is not accurate and should be discounted.

4

Plaintiff "chose to leave...without ensuring that staff was aware [he] w[as] leaving" which "compromised the integrity of the kitchen." (Dkt. 1, Ex. M.) At Step III, the Step I and II decisions were upheld. (Dkt. 1, Ex. N.)

Defendants Keith Green's and Connie Ignasiak's affidavits state that although plaintiff did have permission to leave early, he did not notify anyone at the time he left, thereby causing a stoppage, so Defendants Green and Ignasiak "would have recommended termination regardless of the 'not guilty' finding because Plaintiff's actions of not notifying someone that he was leaving violated the integrity of the work assignment." (Dkt. 21, Ex. 8, 9.)

Six months prior to this incident, Plaintiff was chosen to participate in the "Chance for Life" program and Plaintiff asked Defendant Carberry if she would put a "hold" on the participants to "prevent arbitrary ride outs"[6] once the inmate committed to the program because the program could not otherwise be completed. (*Id.* ¶ 38.) Plaintiff further alleges that on August 22, 2006, Plaintiff was assured by Defendant Carberry that "all transfers had to meet with her approval and that she would not approve any of us being transferred except for disciplinary reasons." (*Id.* ¶ 39)(emphasis in original). Plaintiff was happy to have been selected for the program and alleges that Defendant Carberry commented, regarding his pending grievance over the food service detail, that "'You guys always make this to-do about principle, but always end up cutting your own throat.'" (*Id.* ¶ 42.) On October 3, 2006, Plaintiff was informed that he was being transferred. (*Id.* ¶ 43.) While being handcuffed prior to his departure, Plaintiff alleges that he "saw Defendant Carberry gesturing the cutting of the throat, she smirked and waved a demonstrative, sarcastic good-bye." (*Id.* ¶ 44.) Plaintiff avers that he has not been involved in any negative behavior and was a facilitator in pre-release classes such as anger management, conflict resolution, and "cage your

---

[6]A "ride out" refers to a transfer to another institution.

rage." (*Id.* ¶ 46.)  Plaintiff notes that he and another prisoner (#255220) "who also had a grievance pending, were the only two transferred, in exchange for two others who were being removed for disciplinary reasons." (*Id.* ¶ 47.)

On October 8, 2006, Plaintiff filed grievance no. MRF-06-10-01285-024z complaining that the transfer was ordered by Defendant Carberry in retaliation against him for filing grievances. (Dkt. 19, Ex. 7.)  This Step I grievance was denied because this 1) was considered a "lateral transfer," since the Riverside Correctional Facility initiated the request to complete a trade for a prisoner needing a custody increase, 2) the Chance for Life program had not yet begun, and 3) Plaintiff provided no evidence supporting his allegations. (*Id.*; Dkt. 1, Ex. O.)  Although Defendants contend that Plaintiff did not file a Step II or III appeal (Dkt. 19 at 19,) Plaintiff has attached a Step II appeal and response form.  Plaintiff also attaches to his response a letter addressed to Director Caruso dated December 7, 2006, in which Plaintiff states that he is awaiting a Step III response on another grievance but has "opted not to respond at Step II, as of November 28, 2006" with respect to grievance no. MRF-06-10-01285-024z.  (Dkt. 23, Ex. A-14 and A-15.)

Plaintiff's complaint concludes that the Defendants conspired to injure Plaintiff and acted "in retaliation and against rights protected under the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution...."  (Dkt. 1 ¶ 53, 56, 78, 87.)  Plaintiff seeks an award of damages, back pay and equitable relief including restoration of his prison job and expungement of the unfavorable work report.

## C.    Governing Law

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must

be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## D. Discussion

Defendants' motion for summary judgment addresses the following claims that defendants construe as having been raised in the complaint and for which summary judgment should be granted in favor of the defendants: (1) conspiracy (Dkt. 19 at 5-9), (2) retaliation (*Id.* at 9-13), (3) Eighth Amendment (*Id.* at 13-14), (4) due process (*Id.* at 23-24), and (5) equal protection. (*Id.* at 25-26.) In addition, Defendants argue that Plaintiff failed to exhaust administrative remedies with

respect to his claim of retaliatory transfer by Defendant Carberry (*Id.* at 17-19), that Plaintiff has not alleged the requisite personal involvement of Defendants Scott, Caruso, and Wolfenbarger (*Id.* at 14-16), and that Defendants are entitled to qualified immunity. (*Id.* at 20-22.)

## 1. Exhaustion - Defendant Carberry

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" includes "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.". *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The

Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added). There is no futility exception to the exhaustion requirement. *Booth v. Churner,* 532 U.S. 731, 741, n. 6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. Dec. 19, 2003).[7] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.13(R). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places and names of all those involved in the issue being grieved are to be included.**

MDOC PD 03.02.130(T).[8]

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the

---

[7] The policy directive was superceded on March 5, 2007. However, since the December 2003 version was in effect at the time of the grievances at issue here, all references herein will be to that version.

[8] I note that the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones,* 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the December 2003 version – clearly requires this higher level of specificity.

response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

Defendants contend that any claim based on Defendant Carberry's decision to transfer Plaintiff is not properly exhausted. (Dkt. 19 at 18-19.) Defendants specifically contend that although Plaintiff filed a Step I grievance no. MRF-06-10-01285-024z complaining that the transfer was ordered by Defendant Carberry in retaliation against him for his having filed other grievances, he did not file a Step II or III appeal as is required to properly exhaust. (Dkt. 19 at 19.) Plaintiff has, however, offered some evidence to show that he did indeed file a Step II appeal. This appeal was denied because it was found that Plaintiff's transfer was a lateral transfer, the Chance for Life program had not yet begun, and Plaintiff had provided no evidence supporting his allegations. (*Id.*; Dkt. 1, Ex. O.)

As to the Step III level, Plaintiff has admitted that he chose not to exhaust. In a letter addressed to Director Caruso dated December 7, 2006, Plaintiff states that he is awaiting a Step III response on another grievance but has "opted not to respond at Step II, as of November 28, 2006," with respect to grievance no. MRF-06-10-01285-024z. (Pl. Resp., Dkt. 23, Ex. A-15.) I suggest that even if Plaintiff had not expressly conceded that he failed to exhaust, Plaintiff's letter to Director Caruso could not substitute for proper exhaustion. *Shephard v. Wilkinson*, 27 Fed. Appx. 526, 527 (6th Cir. Dec. 5, 2001)("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance

process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Howell v. Leroux*, 20 Fed. Appx. 375, 377 (6th Cir. Sept. 21, 2001); *Clark v. Beebe*, No. 98-1430, 1999 WL 993979, *2 (6th Cir. Oct. 21, 1999)(district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney that eventually made its way to the warden). Consequently, I suggest that Defendants are ultimately correct that Plaintiff has failed to properly exhaust his claim against Defendant Carberry based on his alleged retaliatory transfer. Accordingly, I suggest that Defendant Carberry and any claim based on Plaintiff's transfer to another institution could be dismissed without prejudice for failure to exhaust.


2.    **Personal Involvement - Defendants Scott, Caruso, Wolfenbarger and Al Shareef**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the federal Constitution or laws and (2) that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). "In order for any of the defendants to be held [liable] under [§ 1983], personal involvement must be shown." *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982), *accord, Hardin v. Straub,* 954 F.2d 1193, 1196 (6th Cir. 1992)(prison official cannot be held liable under § 1983 where plaintiff failed to show personal involvement of official*); Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)(liability under § 1983 must be predicated upon some showing of direct, active participation in the alleged misconduct). In addition, "§ 1983 liability must be based on more than respondeat superior, or the

right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), quoting *Hays v. Jefferson County, Ky*, 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff must allege that a supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007), *quoting Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995).

After examining Plaintiff's complaint, Defendant Scott is named in the factual allegations as having scolded ARUS Wade about his finding Plaintiff not guilty of the misconduct. (Dkt. 1 at 4, ¶¶ 23-24.) Plaintiff further avers that he observed Defendants Wolfenbarger, Scott, Green, and Ignasiak talking together right before he was informed that he would actually be terminated by Defendant Green. (*Id.* ¶¶ 25-26.) In addition, Plaintiff avers that Defendant Ignasiak stated "we know about ARUS Wade. And we know how you people stick together. Don't worry. The Deps'[Deputy Warden has] got his number and so does the Warden [Defendant Wolfenbarger]." (Dkt. 1 ¶ 30.) In addition, Plaintiff alleges that Defendant Ignasiak indicated that she and Defendant Green had "discussed the matter with the warden and had determined that Plaintiff was in fact guilty, irrespective of ARUS Wade's findings." (Dkt. 1 ¶ 31.)

Defendants Scott and Wolfenbarger are also named as co-conspirators in the factual section and the "causes of action" section of Plaintiff's complaint. (Dkt. 1 ¶¶ 56-58.) Defendants Caruso and Wolfenbarger are named in the factual section as having failed to keep proper records and in the "causes of action" section as having had a "clear duty to act when Plaintiff appealed to the concerning the fraudulent and misinformation in his file." (*Id.* ¶ 59, and p. 16.)

I suggest that these averments set forth sufficient allegations of personal involvement by Defendant Scott and Defendant Wolfenbarger. However, I suggest that Plaintiff has alleged nothing against Defendant Caruso beyond the mere failure to control employees, which that is insufficient under § 1983. *Shehee, supra; Petty, supra.* Therefore, I suggest that summary judgment be granted in favor of Defendant Caruso for failure to allege any personal involvement on her part.

I note that although not specifically argued by Defendants, the complaint fails to allege any action taken by Defendant Al Shareef other than his giving Plaintiff permission to leave work, writing him up for a minor misconduct, and "summoning" Plaintiff to the office. (Dkt. 1 ¶¶13, 16, 26.) Defendant Al Shareef is not included in the list of individuals observed talking in the office just before Plaintiff was informed that he was terminated from employment, despite having been found not guilty as on the misconduct ticket. (*Id.* ¶ 25.) Plaintiff's complaint centers not around the issuance of the minor misconduct ticket, but rather the Defendants' failure to credit ARUS Wade's finding that Plaintiff was not guilty of that offense. Since Defendant Al Shareef is not mentioned with reference to any conduct following the not guilty finding, I suggest that summary judgment in favor of Defendant Al Shareef be granted for failure to allege any personal involvement in the actions that actually form the legal basis for the complaint.

### 3. Conspiracy - Defendants Ignasiak, Green, Scott and Wolfenbarger and Carberry

In order to state a cause of action for conspiracy to violate constitutional rights under 42 U.S.C. § 1985(3), plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws; and (3) an act in furtherance of that conspiracy (4) which causes injury to person or property,

or a deprivation of a right or privilege of a United States citizen. *Collyer v. Darling*, 98 F.3d 211. 233 (6th Cir. 1996). A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Vague and conclusory allegations of conspiracy unsupported by material facts are insufficient to state a claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

For summary judgment purposes, "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [that the alleged co-conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Robinson v. Township of Waterford*, 883 F.2d 75, 79 (6th Cir. 1989)(internal citations omitted).

In the instant case, Plaintiff has alleged that Defendants Ignasiak, Green, Scott and Wolfenbarger met together right before he was terminated from his food service job despite ARUS Wade's finding him not guilty of any misconduct. (Dkt. 1 ¶25.) In addition, Plaintiff indicates that Defendant Ignasiak stated that she and Defendants Green and Wolfenbarger determined to ignore ARUS Wade's finding that Plaintiff was not guilty, because "we know how you people stick together...The Deps' got his number and so does the warden" and that "little shit Wade ain't working with nothing...Some niggers are insignificant in the scheme of things." (Dkt. 1 ¶¶ 30, 31, 27.) On the other hand, Defendants Green and Ignasiak contend that Plaintiff was terminated despite the not guilty finding because although he had permission to leave, he did not notify anyone of the time of his departure. (Dkt. 21, Ex. 8, 9.)

I suggest that Plaintiff has under the standards set forth above, stated a claim for conspiracy. He has alleged that he personally observed the involvement of these three Defendants for the purpose of depriving him (and African Americans) the equal protection of the laws, and that he

was terminated from his job despite ARUS Wade's finding him not guilty, which would further the conspiracy and injure him. *Collyer, supra.*. In addition, he has asserted improper racial animus as evidenced by the statements. *Smith, supra.* Although Plaintiff would ordinarily be prevented from testifying about these hearsay statements, it is possible that the declarants would testify to them, or they may be admissible as a statement against interest if the declarant is unavailable under FED. R. EVID. 804(b)(3), or under the residual hearsay exception FED. R. EVID. 807, or more likely as impeachment evidence against any declarant who testifies to the contrary. I note that impeachment evidence can be adequate to survive summary judgment. *See Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005) ("The foundational prerequisites of Rule 613(b) require only that the witness be given an opportunity, at some point, to explain or deny the prior inconsistent statement and that the opposing party be given the opportunity to examine the statement . . . [however,] when a witness admits to making a prior inconsistent statement, extrinsic proof of the statement is inadmissible.") It is possible to preclude summary judgment with impeachment evidence alone under the appropriate circumstances. "To prevent summary judgment on the basis of witness credibility, plaintiff must provide specific impeachment evidence." *Sowemimo v. Cowan*, No. 01-255-DRH, 2004 WL 3495227, *2 (S.D. Ill. Feb. 17, 2004). *Accord Muhammed v. City of Chicago*, 316 F.3d 680, 683-84 (7th Cir. 2002) ("to have prevented summary judgment, [Plaintiff] needed to provide specific evidence when attacking [witness's] credibility, such as contradictory eyewitness accounts or other impeachment evidence"); *Wilmington Trust Co. v. Manufacturers Life Ins. Co.*, 624 F.2d 707, 709 (5th Cir. 1980) (finding that "prospective impeachment of the movant's evidence" sufficed to preclude summary judgment where plaintiff gave false information on insurance application and witness for insurer claimed it would not have issued the policy but for the false information and plaintiff

sought to impeach witness as biased). I therefore suggest that these possible bases for admissibility or, at the very least impeachment, are sufficient to survive summary judgment as to Defendants Ignasiak, Green, Scott, and Wolfenbarger.

Although Plaintiff's claims regarding the transfer ordered by Defendant Carberry are not exhausted, I further suggest that the allegations against her fall short of participation in the alleged conspiracy. Her comment was racially neutral and appears to have been critical of prisoners in general and her alleged sarcastic good-bye wave, gesture as if cutting her throat, and smirk occurring upon his transfer is again racially neutral and falls short of displaying the racial animus needed to join the alleged conspiracy. (Compl., Dkt 1 ¶¶ 42, 44.) Therefore, I suggest that Defendant Carberry's motion for summary judgment should be granted on the merits.

### 4.        Due Process - Defendants Ignasiak, Green, Scott, Wolfenbarger and Carberry

### A.        Procedural Due Process

In order to prevail on a procedural due process claim in the Sixth Circuit, plaintiff must: (1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).[9] An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff has not alleged that established state procedures violate due process rights nor has he alleged the absence of state

---

[9]This holding is derived from *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986), which held that deprivation of liberty or property interests by state employees do not give rise to federal due process claims unless the state fails to afford an adequate post-deprivation remedy. Thus, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, (479 (6th Cir. 1995).

remedies to redress any procedural wrong; therefore, I suggest that summary judgment in favor of defendants should be granted as to the procedural due process claim under the Fifth and Fourteenth Amendments.

Even if Plaintiff could show that state processes are inadequate or unavailable, I suggest that he has failed to state a claim based on procedural due process since he does not have a protected liberty or property interest in a prison job. To plead a procedural due process claim, a plaintiff must allege: (1) a life, liberty, or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky Dep't. Of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1990). Procedural due process rights arise only after a showing that plaintiff holds a constitutionally protected liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003); *International Union, United Auto., Aerospace & Agric. Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1251 (6th Cir. 1996)(absent protected property interest in continued employment, no process is due).

I suggest that Plaintiff has not shown, nor could he show, that he had any protected liberty or property interest in a particular prison job. A prisoner has no legally protected property or liberty interest in a prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.3d 950, 955 (6th Cir. 1987)("no prisoner has a constitutional right to a particular job or to any job."); *Wilson v. Buschell*, No. 2:05-cv-106, 2007 WL 1106124, *7 (W.D. Mich. Apr. 5, 2007)(granting summary judgment in favor of defendants on procedural and substantive due process grounds because plaintiff had no property or liberty interest in his job assignment). In addition, even if the termination were based on false information, i.e., that Plaintiff left without notifying the proper person at the proper time when he did provide proper notice, the result would

be the same. *Blevins v. Jones*, No. 5-06-CV-16, 2006 WL 374253, *4 (W. D. Mich. Feb. 17, 2006)(A false "Special Problem Offender Notification" ("SPON") does not implicate a liberty interest, citing cases)*; Kalasho v. Michigan Parole Board*, No. 1:05-CV-700, 2005 WL 3454666, *2 (W.D. Mich. Dec. 16, 2005)("Because Petitioner has no liberty interest in being paroled, he cannot show that any false or inaccurate information was relied upon to a constitutionally protected degree"). Furthermore, the Defendants' failure to comply with their own administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Smith v. Freeland*, 954 F.2d 343, 347-48 (6th Cir. 1992)(state's failure to comply with its own law, rule, or regulations by itself state a claim under § 1983); *Spruyette v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *Cotten v. Davis*, 215 Fed. Appx. 464, 468 (6th Cir. Feb. 8, 2007)("[T]here is no constitutionally protected liberty interest in having a state parole board follow its own statutes and regulations."); *compare, Kanitz v. White*, No. 03-10180-BC, 2005 WL 3132210 (E.D. Mich. Nov. 22, 2005)(denying summary judgment in favor of defendant as to procedural due process claim where plaintiff denied the ability to see potentially exculpating or inculpating evidence against him, citing *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995)).[10]

Earlier in this Report, I suggested that all of Plaintiff's claims regarding his transfer, and resulting ineligibility for the "Chance for Life" program, are unexhausted and could be dismissed without prejudice. I note that even if they were exhausted, I would further suggest that any procedural due process claim based on his transfer should be dismissed with prejudice for failure to state a claim upon which relief can be granted. A prisoner has no constitutional right to be

---

[10]This comports with the general rule that actions in reviewing a prisoner's administrative appeal or alleging discontent with grievance procedures cannot form the basis for liability under sec. 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(failure to process grievances, without more, is not actionable under sec. 1983); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)(dismissing claim alleging a failure to investigate grievances).

incarcerated in a particular facility or to be held in a specific security classification or to participate in any rehabilitative program. *Olim*, 461 U.S. at 245 (particular facility); *Hewitt v. Helms*, 459 U.S. 460, 468-69, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)(security classification); *Moody v. Daggett*, 429 U.S. 78, 88, n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976)(security classification and rehabilitative program); *Meachum v. Fano*, 427 U.S. 215, 244, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)(particular facility); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995). "[C]hanges in the conditions of confinement having a substantial impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.'" *Vitek v. Jones*, 445 U.S. 480, 493, 100 S. Ct. 1254, 1264, 63 L. Ed. 2d 552 (1980)(holding that transfer of an inmate from a prison to a mental hospital implicated a liberty interest), quoting *Montayne v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 466 (1976). "Even when...the transfer involves long distances and an ocean crossing, the confinement remains within constitutional limits[, t]he difference is a matter of degree, not of kind, and *Meachum* instructs that 'the determining factor is the nature of the interest involved rather than its weight.'" *Olim v. Wakinekona*, 461 U.S. 238, 248, 103 S. Ct. 1741, 1747, 75 L. Ed 2d 813 (1983)(holding that interstate prison transfer from Hawaii does not deprive an inmate of any liberty interest protected by the Due Process Clause and that state had not created protected liberty interest), *compare Wilkinson v. Austin*, 545 U.S. 209, 214, 125 S. Ct. 2384, 2389, 162 L. Ed. 2d 174 (2005)(holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio.").

Accordingly, I suggest that Defendants' motion for summary judgment be granted as to all claims, i.e., regarding loss of prison job and transfer, based on procedural due process.

## B. Substantive Due Process

"Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. S.E. Local Sch. Dist. Bd. of Ed.*, 107 F.3d 1220, 1228 (6th Cir. 1997)(granting summary judgment in favor of defendants because defendants' decision not to rehire Plaintiffs did not deprive them of a constitutional guarantee nor shock the conscience). Case law, I suggest, is unclear as to whether a Plaintiff is permitted to argue that the governmental conduct shocks the conscience without first showing deprivation of a particular constitutional right. *See*, *King v. Ohio*, No. 2:05:cv-966, 2006 WL 2707964, *4 (S.D. Ohio Sept. 15, 2006)(and cases cited therein), *compare*, *Rios III v. Berghuis*, No. 1:06-CV-267, 2006 WL 1361229, *5 (W. D. Mich. May 17, 2006)("[S]ubstantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest"), citing *Block v. Potter*, 631 F.2d 233, 236, n. 2 (3d Cir. 1980),[11] *and Farmer v. Pike County Agric. Soc'y,* 411 F. Supp. 2d 838, 843 (S.D. Ohio 2005)(applying the "shock the conscience" standard even thought the court found there "is not specific constitutional guarantee of a right to assist one's stepson in a county fair livestock auction"), *with Sutton v. Cleveland Bd. of Ed.*, 958 F.2d 1339, 1351 (6th Cir. 1992)("Absent the infringement of some 'fundamental right,' it would appear that the termination of public employment does not constitute a denial of substantive due process"), *and Gurik v. Mitchell*, 26

---

[11]Several courts have questioned the vitality of the *Block* decision. See, e.g., *Wildermuth v. Furlong*, 147 F.3d 1234, 1239 (10th Cir. 1998)(and cases cited therein).

Fed. Appx. 500, 505 (6th Cir. Jan. 15, 2002)("Our requirement that terminated public employees allege violations of fundamental rights in order to allege violation of a substantive due process property interest in their employment simply standardizes the 'shocks the conscience' test...a public employee's termination does not 'shock the conscience' in this court if it was not based on the violation of some fundamental right.").  I suggest that the more sound approach is that taken in *Sutton* and *Gurik*; however, this issue need not be resolved in this case,  since, I suggest, either approach would yield the same result.

Here, as suggested earlier in this Report, because Plaintiff does not have a protected liberty or property interest in his prison job, place of incarceration, or participation in the "Chance for Life" program; he cannot allege deprivation of a particular constitutional guarantee.   I further suggest that even though the allegations describe what is arguably an unfair situation, they do not rise to the level of behavior shocking to the conscience which would support a substantive due process claim.  Thus, I suggest that Defendants' motion for summary judgment be granted as to all substantive due process claims based on loss of prison job or transfer.

### 5.    Equal Protection - Defendants Ignasiak, Green, Scott, Wolfenbarger and Carberry

To establish a claim under the Equal Protection Clause,[12] a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.

---

[12]"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  United States Constitution, XIV Am., § 1.

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

The modern application of the clause to prisoner cases appears to have begun in *Lee v. Washington*, 390 U.S. 333, 88 S. Ct. 994, 19 L. Ed. 2d 1212 (1968), where the United States Supreme Court affirmed the lower court decision that "certain Alabama statutes violate the Fourteenth Amendment to the extent that they require segregation of the races in prisons and jails and establishing a schedule for desegregation of these institutions."

The next oft-cited case is *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974), wherein the Court cited *Lee, supra,* and stated that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race" as part of a list of rights retained by prisoners. The case itself did not involve an equal protection challenge, or any issues of race, but instead challenged the procedures used to revoke good-time credits. The Court held that where the state "created a right to a shortened prison sentence through the accumulation of credits for good behavior," that right "is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures."

Although not involving an equal protection challenge, *Wolff* has been cited to support the conclusion that "absent a compelling state interest, racial discrimination in administering prisons violates the Equal Protection Clause of the Fourteenth Amendment." *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987).

Of course, the application of the Equal Protection Clause to the administration of prisons could include the type of segregation or other racially-based policy discussed in *Lee, supra*, or it could be broadly read to include any decision made by one individual agent of the state in favor of or against an individual prisoner. At times, it is broadly read, e.g., *Gilman v. Manzo*, No. 2:03-

CV-00044 WGH RL, 2005 WL 941676, * 2 (S.D. Ind. Feb 24, 2005)(denying summary judgment on equal protection claim where plaintiff prisoner alleged he was fired from his Wire Harness shop job because of race, citing *Black*).

In our own Circuit, the court has held that "[a]lthough an inmate has of course no constitutional right to the cellmate or job of his choice, Harris's statement, read liberally as it must be since it is the pro se pleading of an uneducated prisoner, charges that the prison has a policy of segregating black from white inmates, in both cell and job assignments, in the Protective Custody Unit...A policy of deliberate racial segregation of prisoners would raise serious questions under the equal protection clause of the Fourteenth Amendment." *Harris v. Greer*, 750 F.2d 617, 618-19 (6th Cir. 1984)(denying motion to dismiss because [a]lthough we cannot conclude at this early stage of the proceeding that the allegation of deliberate racial segregation is correct, neither can we say that the complaint fails to state a claim ..."). Although *Harris* involved a policy of segregating whites from blacks in job assignments, *Harris* has been broadly read to stand for the proposition that an "allegation of deliberate racial discrimination in prisoner's job assignments [is] sufficient to state equal protection [claim]." *Garcia v. Sanders*, No. A.04-CV-60-HRW, 2005 WL 2010276, *8 (E.D. Ky. Aug. 19, 2005)(finding plaintiff stated equal protection claim where he alleged he was terminated from his prison job based on race where plaintiff alleged a defendant told plaintiff he was sending him back to his people and used a racial epithet).

Furthermore, as in the substantive due process discussion above, there is some confusion whether a prisoner needs to allege deprivation of a protected interest in addition to his claim that he was treated unequally. Some courts have held that even where a plaintiff lacks a life, liberty, or property interest, he may bring an equal protection claim. *Garcia, supra; Troxel v. DeWalt*, No. 06-CV-273-KSF, 2007 WL 196894, *2 (E.D. Ky. Jan. 23, 2007)(addressing equal protection claim

after finding no liberty interest in plaintiff's prison job); *Skibbe v. Michigan Dep't of Corrections*, No. 1:05-CV-175, 2006 WL 625869, *4 (W.D. Mich. Mar. 9, 2006)(addressing equal protection claim after finding plaintiff had no liberty interest in prisoner classification); *Enriquez v. Stringfellow*, 81 Fed. Appx. 487, 2003 WL 22770168 (5th Cir. Nov. 24, 2003)("absence of a protected liberty interest in release on parole does not, however, preclude an equal protection claim,") citing *Sandin v. Conner*, 515 U.S. 472, 487, n. 11, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).[13] At other times, courts appear to require plaintiff show the presence of a protected interest before challenging the equality of the state's individual provision of that protected interest. *E.g., Haynes v. Hudson*, 899 F.2d 1221 (Table), 1990 WL 41025, *1 (6th Cir. Apr. 10, 1990)(upholding dismissal of complaint as frivolous where plaintiff alleged violation of his due process and equal protection rights because there is no constitutional right to parole nor had Michigan created a liberty interest in parole without distinguishing between due process and equal protection claims); *Chevrier v. Marberry*, No. 04-10239, 2006 WL 3759909, *6 (E.D. Mich. Dec. 20, 2006)(dismissing equal protection claim based on denial of reduction in sentence even if some inmates with similar convictions were granted early release without reference to earlier finding of no protected liberty interest), *citing Clapper v. Wisconsin Dep't of Corrections*, 946 F. Supp. 672, 680 (E.D. Wisc. 1996)("Mere inconsistencies or erroneous decisions in prison management [] do not by themselves constitute a cognizable equal protection claim.").

---

[13]The footnote cited comes at the conclusion of the majority opinion which holds that neither the Hawaii prison regulation nor the Due Process Clause itself afforded plaintiff a protected liberty interest that would entitle him to procedural protections and states, in its entirety: "Prisoners such as Conner, of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment, where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available." *Sandin*, 515 U.S. at 487, n. 11. Although I find the footnote a tenuous foundation for the rule that even absent a liberty (or property) interest, an equal protection claim may be stated, other courts have not been as reticent.

Since resolution of this legal issue is beyond this Report's scope, I will assume that Plaintiff may state an equal protection claim even absent a constitutionally protected property interest in his job. I thus suggest that under this framework, Plaintiff's claim of a violation of equal protection should survive summary judgment. For the same reasons stated under the Conspiracy section of this Report, I suggest that Plaintiff has stated and supported allegations of racially derogatory language coupled with specific conduct needed to establish an equal protection claim. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985); *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Therefore, I suggest that Defendants' motion for summary judgment as to this claim be denied as to Defendants Ignasiak, Green, Scott and Wolfenbarger.

Even if Plaintiff's claims against Defendant Carberry were exhausted, I suggest that the alleged racially neutral comments and gestures are insufficient to show an equal protection violation. Therefore, I suggest that Defendant Carberry's motion for summary judgment should be granted.

### 6. Retaliation - Defendants Ignasiak, Green, Scott, Wolfenbarger and Carberry

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in a constitutionally protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999)(en banc); *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, conclusory allegations of retaliatory motive unsupported by any specific factual foundation are insufficient to state a claim under § 1983. See, *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *Pack v. Martin*, 174 Fed. Appx. 256, 259, 2006 WL 772903, *2

(6th Cir. Mar. 27, 2006); *McMillan v. Fleming*, 136 Fed. Appx. 818, 820-21, 2005 WL 1389523, *2 (6th Cir. June 7, 2005). Where the alleged retaliatory conduct began before the plaintiff engaged in protected speech, no retaliatory claim can be established. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

Here, the Plaintiff's filing of non-frivolous grievances is protected conduct under the First Amendment. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). However, I suggest that it is at best arguable that Plaintiff's loss of a prison job is adverse conduct because I suggest that loss of a job would not deter a person of ordinary firmness from continuing to file grievances. *Jewell v. Leroux*, 20 Fed. Appx. 375, 377-78 (6th Cir. 2001)(finding no adverse action where plaintiff alleged he had been wrongfully removed from a prison job and transferred to another prison in retaliation for filing prison grievances).

Even if removal of Plaintiff from his job can be considered sufficiently adverse conduct, I suggest that Plaintiff has not alleged or come forward with evidence to support the causation element of his retaliation claim. In the instant case, the only exhausted claim of retaliation regards Plaintiff's loss of his prison job. This loss occurred before he filed his grievance complaining about that loss. (Dkt. 1, Ex. M-N; Dkt. 19, Ex. 5-6.) Since Plaintiff's termination from employment (alleged retaliatory conduct) occurred before the plaintiff engaged in protected speech (grievance), no retaliatory claim can be established. *Mt. Healthy, supra.* Accordingly, I suggest that Defendants' motion for summary judgment be granted as to this claim concerning Plaintiff's loss of prison job.

I further suggest that even if Plaintiff's transfer claim were properly exhausted, it fails to state a claim for retaliation. Transfer to the general population of another prison facility, absent

foreseeable consequences that the transfer would interfere with Plaintiff's access to the courts or some other fundamental right, is not considered sufficiently adverse action to deter a person of ordinary firmness from exercising his First Amendment rights. *Hix v. Tennessee Dep't of Corrs.,* 196 Fed. Appx. 350, 358 (6th Cir. Aug. 22, 2006); *accord, Jewell v. Leroux*, 20 Fed. Appx. 375, 377-78 (6th Cir. 2001)(finding no adverse action where plaintiff alleged he had been wrongfully removed from a prison job and transferred to another prison in retaliation for filing prison grievances); *Mandela v. Campbell*, 181 F.3d 102, 1999 WL 357825, *3 (6th Cir. May 26, 1999); *Poindexter v. McKee*, No. 5:05 CV 65, 2006 WL 322480, *2 (W.D. Mich. Feb. 10, 2006); *compare Siggers-El v. Barlow*, 412 F.3d 693-701-02 (6th Cir. 2003)(transfer to a prison which caused the prisoner to lose a job that he needed to pay his attorney and which made it more difficult for his attorney to visit him interfered with his right of access to the courts and thus could be considered adverse action). Transfer to administrative segregation would likely be considered adverse but that is not the situation presented in this case. *Mandela*, *3, citing, *Thaddeus-X, supra.* I also note that is it constitutionally permissible for prison authorities to transfer an inmate to another facility to simply give prison staff a respite from a prisoner's grievances. *Ward v. Dyke*, 58 F.3d 271, 274-75 (6th Cir. 1995). Thus, I suggest that summary judgment be granted with respect to all of Plaintiff's claims of retaliation, i.e., concerning loss of his prison job and transfer.

**7.    Eighth Amendment - Defendants Ignasiak, Green, Scott, Wolfenbarger and Carberry**

It is beyond dispute that, as a broad general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his medical needs or his safety. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "A

prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, 'sufficiently serious' [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the 'unnecessary and wanton' infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with 'deliberate indifference.'" *Davis v. Brian*, 1999 WL 503522, *3 (6th Cir. July 9, 1999) (unpublished) (internal citations omitted). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the instant case, I suggest that Plaintiff has not alleged any conduct implicating his medical needs or safety and thus, fails to state an Eighth Amendment claim. Therefore, I suggest that Defendants' motion for summary judgment be granted as to this claim concerning both his loss of prison job and transfer.

### 8. Qualified Immunity - Defendants Ignasiak, Green, Scott, and Wolfenbarger

Defendants assert that they are entitled to qualified immunity. (Dkt. 19 at 20-22.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as

to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002), *quoting Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one under the qualified immunity analysis. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005), quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002). At times, this Circuit employs a two-part test, *see, e.g., Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002); the three-part test simply adds the summary judgment language requiring evidence to support the claim and encompasses the rule that when the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School District of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). However, as noted earlier, *Scott v. Harris* requires that the summary judgment analysis permeate each step, including step one. In doing so, the court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

Earlier in this Report, I suggest that Plaintiff's claims for conspiracy and equal protection should survive summary judgment. I further suggest that these rights were clearly established at the time such that a reasonable official would have understood that his behavior violated these rights. *Tucker, supra.* Consequently, I suggest that Defendants Ignasiak, Green, Scott and

Wolfenbarger are not entitled to qualified immunity with respect to the suggested remaining claims of conspiracy and equal protection.

## E. Conclusion

I therefore recommend that the Court grant the motion for summary judgment (and dismiss with prejudice) Defendants Caruso and Al Shareef for lack of personal involvement; grant summary judgment (and dismiss with prejudice) Defendant Carberry substantively and for failure to exhaust; grant summary judgment (and dismiss with prejudice) Plaintiff's procedural and substantive Due Process claims regarding both Plaintiff's loss of prison job and transfer, First Amendment Retaliation claim regarding both Plaintiff's loss of prison job and transfer, and Eighth Amendment claim regarding both Plaintiff's loss of prison job and transfer; and grant summary judgment (and dismiss without prejudice) any potentially remaining claims based on his transfer to another institution for failure to exhaust. I further recommend that the Court deny the motion for summary judgment as to Plaintiff's claims for conspiracy against Defendants Ignasiak, Green, Scott, and Wolfenbarger only and equal protection claim against Defendants Ignasiak, Green, Scott, and Wolfenbarger only. Finally, I recommend that Defendants Ignasiak, Green, Scott and Wolfenbarger are not entitled to qualified immunity with respect to the above conspiracy and equal protection claims.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596

(6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


                                              s/ 𝒞harles 𝒠 𝓑inder
                                              CHARLES E. BINDER
Dated: February 8, 2008                       United States Magistrate Judge




                              **CERTIFICATION**

        I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Julia R. Bell, served on Solel Umani by first class mail, and served on U.S. District Judge Taylor in the traditional manner.


Date:  February 8, 2008          By_____s/Patricia T. Morris_____
                                         Law Clerk to Magistrate Judge Binder